UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE G. AMEZQUITA,<br><br>                          Plaintiff,<br><br>v.<br><br>CORRECTIONAL OFFICER<br>D. HOUGH, et al.,<br><br>                        Defendants. | Case No.: 3:19-cv-01461-AJB-KSC<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;<br>ORDER DENYING MOTION TO APPOINT COUNSEL**<br><br>**[Doc. Nos. 47, 49]** |

Plaintiff Jose Amezquita ("plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to Title 42, United States Code, Section 1983. *See* Doc. Nos. 1, 25. Plaintiff alleges that defendants Armenta, Hough and Downs were deliberately indifferent to a serious risk of harm to him, in violation of his Eighth Amendment rights. *See* Doc. No. 25 at 3, 6-8.[1] Presently before the Court is defendants' Motion for Summary Judgment ("Motion" or "Mot."). Doc. No. 47. Pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1, the undersigned Magistrate Judge submits this

---

[1] Citations herein are to the Court's ECF-generated page numbers, except for party and witness declarations, citations to which are to numbered paragraphs.

1

Report and Recommendation to United States District Judge Anthony J. Battaglia. Having carefully considered the evidence and arguments presented, and for the reasons set forth below, the Court **RECOMMENDS** that the District Court **GRANT** defendants' Motion. The Court further **RECOMMENDS** that the District Court **DENY** plaintiff's request under Federal Rule of Civil Procedure 56(d) to defer ruling on defendants' Motion to allow him to take additional discovery.

Plaintiff has filed an Opposition to Defendant's [*sic*] Motion for Summary Judgment (the "Opposition" or "Opp."), in which he states he "need[s] an attorney to assist [him] in gathering the evidence, including witness statements, and presenting my case." *See* Doc. No. 51 at 18. Plaintiff reiterated his request for legal assistance in a separate letter to the Court. *See* Doc. No. 49. The Court will construe these statements as a Motion to Appoint Counsel. For the reasons below, plaintiff's Motion to Appoint Counsel is **DENIED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed the instant lawsuit on August 2, 2019, asserting that Correctional Officers Hough and Downs, Warden Doe 1, Associate Warden Doe 2, and Sergeant Doe 3 had violated his Eighth Amendment rights. *See generally* Doc. No. 1. On September 25, 2019, after conducting the *sua sponte* screening required under 28 U.S.C. § 1915(e)(2) and § 1915A(b), the District Court dismissed plaintiff's claims against Warden Doe 1 and Sergeant Doe 3, but allowed plaintiff to proceed on his claims against Hough, Downs, and Associate Warden Doe 2. *See* Doc. No. 3 at 9-10. With the Court's leave (Doc. No. 24), plaintiff filed an amended complaint on February 21, 2020 ("Amended Complaint" or "Am. Cpt."), substituting Associate Warden Armenta for Doe 2. Doc. No. 25. Defendants answered the Amended Complaint on July 16, 2020. Doc. No. 35.

On December 20, 2019, the undersigned Magistrate Judge set a pretrial schedule, directing, among other things, that the parties complete fact discovery by April 17, 2020. Doc. No. 9. On March 31, 2020, plaintiff moved for additional time to complete discovery, stating that defendants had "failed to produce any relevant documents" in response to his

discovery requests.  Doc. No. 21 at 1.  Defendants opposed the request and submitted copies of their responses to plaintiff's discovery requests.  *See generally* Doc. No. 23.  On May 8, 2020, the undersigned denied plaintiff's request for additional time to complete discovery for failure to establish good cause.  Doc. No. 26 at 2.

On June 23, 2020, plaintiff moved to compel responses to his first and second requests for documents.  Doc. No. 29.  Defendants opposed on July 24, 2020.  Doc. No. 38.  The undersigned denied plaintiff's motion on August 26, 2020.  Doc. No. 45.  As to plaintiff's first set of document requests, the Court found that plaintiff's motion was untimely and that plaintiff had failed to meet and confer with defendants before filing it, and that even absent these procedural deficiencies, the requests were overbroad and sought irrelevant information.  *See id.* at 3-5.  The sole exception was plaintiff's Request for Production No. 2, which sought "[a]ll written statements and reports, original or copies, identifiable as reports about the incidents of 10/18/2018 made by CDCR employees and/or witnesses," to which the Court ordered defendants to serve a supplemental response.  *Id.* at 5.  As to plaintiff's second set of document requests, the record demonstrated that they had not been served until April 21, 2020, after the deadline for completing fact discovery had passed, and the Court accordingly denied plaintiff's motion to compel responses to this untimely discovery.  *See id.* at 6-7.  Finally, the Court denied what it deemed to be plaintiff's request to re-open discovery, finding plaintiff had not demonstrated his diligence.  *Id.* at 7-8 (citing *Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002) for the proposition that "[a] request to re-open discovery may be denied if the parties already 'had ample opportunity to conduct discovery.'").  Plaintiff neither objected to nor sought reconsideration of this ruling.

On September 10, 2020, defendants filed the instant Motion for Summary Judgment.  Plaintiff filed an opposition on September 28, 2020 ("Opposition" or "Opp."). Doc. No. 51. Defendants' Reply was filed on October 30, 2020 ("Reply").  Doc. No. 53.

///

///

**B. Summary of Allegations and Facts**

Plaintiff was incarcerated at Richard J. Donovan ("RJD") correctional facility in October 2018, and was assigned to an administrative segregation unit ("ASU"). Am. Cpt. at 3. The events giving rise to this lawsuit occurred on October 18, 2018, when plaintiff appeared before an Institutional Classification Committee ("ICC"). Defendants represent, and plaintiff does not dispute, that the purpose of the ICC hearing was to assess whether plaintiff should remain in administrative segregation, and where to place him after he completed his term in that unit. *See* Declaration of F. Armenta in Support of Defendants' Motion for Summary Judgment ("Armenta Decl."), Doc. No. 47-4, ¶2. Armenta was among the ICC committee members in attendance at the October 18, 2018 hearing. *See* Doc. No. 35 at 3; *see also* Armenta Decl., ¶1. Plaintiff's objected to the ICC's decision to release plaintiff him into Facility C, a "special needs yard" ("C-Yard"), rather than to Facility A, a general population unit ("A-Yard"). *See* Am. Cpt. at 3, 6. Plaintiff alleges that his placement in C-Yard would "endanger his life." *Id.* at 6.

Plaintiff alleges that at the time of the October 18, 2018 ICC hearing, he was suicidal and was suffering from paranoid delusions and severe claustrophobia. *Id.* at 3. Plaintiff further alleges that during the ICC hearing, he informed Armenta "three or four times" that by transferring him to C-Yard, Armenta would be "putting [plaintiff's] life in danger." *Id.* at 6. Armenta allegedly responded, "I don't care, do what you gotta do. I run this prison. I tell you where you are going." *Id.* Plaintiff alleges that when the ICC hearing concluded, he was escorted back to his cell in the administrative segregation unit by Hough and Downs, whom he told that he was feeling suicidal. *Id.* Plaintiff claims Hough and Downs laughed at him and told him to "go ahead and kill [him]self." *Id.*

According to plaintiff, he returned to his cell in the ASU and, while in an "agitated state," "discovered a large blade secreted in the mattress," which he used to cut his right wrist. *Id.* Plaintiff was discovered by unidentified correctional officers who transported him via ambulance to the medical clinic where he received medical and psychological care. *Id.*; *see also* Declaration of D. Hough in Support of Defendants' Motion for Summary

Judgment ("Hough Decl."), Doc. No. 47-13, ¶10; Declaration of R. Downs in Support of Defendants' Motion for Summary Judgment ("Downs Decl."), Doc. No. 47-9, ¶10. Plaintiff was also seen by psychologist A. Loebenstein when he returned to RJD on October 18, 2018. *See* Declaration of Doctor A. Loebenstein in Support of Defendants' Motion for Summary Judgment ("Loebenstein Decl."), Doc. No. 47-15, ¶2. Dr. Loebenstein interviewed plaintiff that day and determined that plaintiff had not attempted suicide. *See* Doc. No. 47-16.

Plaintiff asserts that defendants violated his Eighth Amendment rights because they were "deliberately indifferent" to the "unreasonable risk of serious harm" to plaintiff. Am. Cpt. at 7. Specifically, plaintiff alleges that Armenta failed to "exercise his supervisory responsibility to make sure appropriate actions were taken related to plaintiff's verbalized intention to commit suicide" and did not "prevent Hough and Downs from making incentivizing remarks for the plaintiff to go ahead and kill himself." *Id.* Plaintiff contends Hough and Downs "never checked back on plaintiff and never notified the mental health staff about his state of emotional distress nor his suicidal intentions." *Id.* at 6. Plaintiff asserts that defendants' conduct "created an unreasonable risk of serious harm to plaintiff," which violated his Eighth Amendment right to be free of cruel and unusual punishment and caused him lasting harm. *Id.* at 7-8.

On November 3, 2020, plaintiff was transferred to Salinas Valley State Prison ("Salinas Valley"), where he remains incarcerated today.

**C. Defendants' Motion**

Defendants advance two main arguments on summary judgment: First, they argue that there is no triable issue of fact regarding plaintiff's Eighth Amendment claims. Mot. at 17-22. Defendants assert that Armenta "had no subjective knowledge" of any risk to plaintiff's health or safety, because plaintiff gave Armenta no reason to believe he would "harm himself as a result of the [ICC's] decision." *Id.* at 19-20. Defendants further argue there is no genuine dispute that Hough and Downs were not deliberately indifferent to

///

plaintiff's mental condition, because the undisputed evidence shows they were not on duty when plaintiff was escorted from the ICC hearing to his cell. *Id.* at 20-22.

Second, defendants argue that even assuming all of plaintiff's allegations are true, he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing suit in civil court. *See generally* 42 U.S.C. § 1997(e). In support of their Motion, defendants submit declarations from Armenta, Hough, Downs, a member of the panel at the ICC hearing, two grievance coordinators, RJD's custodian of records, and Dr. Loebenstein; sign-in records for officers on duty on October 18, 2018; documentation from the ICC hearing; excerpts of plaintiff's deposition testimony; Dr. Loebenstein's report of his October 18, 2018 interview with plaintiff; and a Separate Statement of Undisputed Facts ("SSUF").

## II. LEGAL STANDARDS

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "principal purpose[] of Rule 56 is to dispose of factually unsupported claims or defenses." *Wilkins v. Ramirez*, 455 F. Supp. 2d 1080, 1087 (S.D. Cal. 2006) (citation omitted). Under the Rule, the moving party bears burden of informing the District Court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party does so, the burden then shifts to the non-moving party to "point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citations omitted). The non-moving party cannot rely on the pleadings, but must "present significant, probative evidence tending to support h[is] allegations." *Bias v. Moynihan*, 508 F.3d 1212,

1218 (9th Cir. 2007) (citations omitted).  While the non-moving party need not produce a "smoking gun[,] … something more than speculative, conclusory allegations is required" to avoid summary judgment.  *Towers v. Iger*, 912 F.3d 523, 532 (9th Cir. 2018).  The Court must then determine, based on the record before it and "with the evidence viewed in the light most favorable to the non-moving party," whether the moving party is entitled to a judgment as a matter of law.  *San Diego Police Officers Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 733 (9th Cir. 2009).

### III.   DISCUSSION

**A. The Court Should Not Defer Entry of Summary Judgment Under Rule 56(d)**

Plaintiff's declaration in support of his Opposition is replete with references to "missing discovery" that he avers would, essentially, prove his allegations and contradict defendants' evidence.  *See* Opp. at 8, 9, 11-14.  It appears that the "missing" discovery refers to plaintiff's first and second sets of document requests that were the subject of his unsuccessful Motion to Compel.  That Motion was denied because the undersigned determined that plaintiff's document requests were overly broad and sought information that was irrelevant to plaintiff's claims, that plaintiff had not diligently pursued discovery, and that both his Motion to Compel and his second set of document requests were untimely.  Doc. No. 45 at 4, 5, 8.  Nevertheless, plaintiff requests leave to pursue this "appropriate discovery thus far denied" if the Court thinks summary judgment is appropriate.  Opp. at 1; *see also id.* at 21 (plaintiff's request that "discovery be ordered").  The Court will construe this as a request pursuant to Rule 56(d), which provides that upon a proper showing that the facts necessary to oppose summary judgment are "unavailable" to the nonmoving party, the Court may defer or deny the motion.  Fed. R. Civ. P. 56(d).  Under the Rule, the Court may in its discretion allow the nonmoving party time to take additional discovery.  *Id.*

"A party seeking to delay summary judgment for further discovery must state 'what other *specific* evidence it hopes to discovery [and] the relevance of that evidence to its claims."  *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (citation omitted)

(emphasis and alteration in the original). However, plaintiff's declaration is lacking in specificity as to *what* additional discovery is necessary, referring only to unspecified "logs," "reports," "videos" and "statements" of unidentified witnesses that are "missing." *See generally id.* Plaintiff simply refers to the purportedly missing discovery "without ever identifying the content of that evidence," which does not merit a continuance under Rule 56(d). *See Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 (9th Cir. 2001).

Even assuming plaintiff had described the "missing" discovery with the requisite specificity, he has nevertheless failed to explain how that discovery relates to his claims or would establish a material issue of fact for trial. As the party "requesting a continuance" under Rule 56(d), plaintiff "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and Cty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). Here, however, plaintiff merely makes a series of conclusory and speculative allegations that "the missing discovery" would assertedly "show" his claims to be "true." Opp. at 8, 9, 11-14. That is insufficient to warrant a continuance. *Tatum*, 441 F.3d at 1100. Much of the allegedly "missing" discovery would have no bearing on plaintiff's allegations as they relate to defendants' conduct on October 18, 2018. For example, plaintiff fails to explain how the identity of the officer who found him after he cut himself, or the medical treatment he received for his injury, would support his claims that defendants Hough and Downs were deliberately indifferent to the risk that he would do so. *See* Opp. at 13-14. Plaintiff is not entitled to a continuance to pursue discovery that is irrelevant to his claims. *See Twentieth Century Fox Television, a Div. of Twentieth Century Fox Film Corp. v. Empire Distrib., Inc.*, 875 F.3d 1192, 1200 (9th Cir. 2017) (affirming denial of Rule 56(d) motion where the requested additional discovery was "irrelevant to the ground on which summary judgment was granted").

Furthermore, while plaintiff claims that "defendants don't want to release the logs, reports and video which shows my claims to be true" (Opp. at 22), defendants represent that all documentation regarding the October 18, 2018 incident that is the subject of

plaintiff's lawsuit has been produced, indicating that the discovery plaintiff seeks does not exist. *See* Doc. No. 53-1 at 16. The District Court need not delay resolution of defendants' Motion based on plaintiff's request for discovery that is "'the object of pure speculation.'" *Stevens*, 899 F.3d at 678 (citation omitted); *see also Sec. Exch. Comm'n v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018) (continuance under Rule 56(d) is warranted only where it is "'likely' that [essential] facts will be discovered") (citation omitted).

For the foregoing reasons, the Court finds that plaintiff has not made the necessary showing under Rule 56(d). The Court therefore **RECOMMENDS** the District Court **DENY** plaintiff's request to defer ruling on defendants' Motion so that he can conduct additional discovery.

**B. There Is No Triable Issue of Fact as to Plaintiff's Failure to Exhaust**

The PLRA requires inmates challenging the conditions of their confinement to exhaust "such administrative remedies as are available" before filing suit in federal court. 42 U.S.C. §1997e(a). This requirement "afford[s] corrections officials the opportunity to address complaints internally," *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014), and "promote[s] greater efficiency and economy in resolving claims." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). "Exhaustion is mandatory[,]" but where an administrative remedy is "effectively unavailable" to the inmate, a failure to exhaust that remedy "does not bar a claim from being heard in federal court." *Soto v. Sweetman*, 882 F.3d 865, 869-70 (9th Cir. 2018) (internal quotation marks and citation omitted); *see also Ross*, 136 S.Ct. at 1858 (noting that inmates "must exhaust available remedies, but need not exhaust unavailable ones.").

In evaluating whether there has been "proper exhaustion," the Court looks to the "California prison system's requirements" for prisoners to pursue a grievance. *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("exhaustion demands compliance with an agency's deadlines and other … procedural rules"). At all times relevant to plaintiff's claim, the administrative process for inmate grievances was set forth in the since-repealed Sections 3084 through 3085 of Title

15 of the California Code of Regulations. *See* Cal. Code Regs. tit. 15 §§ 3084-3085 (2019) (repealed June 1, 2020). Pursuant to those regulations, an aggrieved inmate was required to complete a CDCR Form 602 within 30 calendar days of the decision or action being appealed. *Id.*, § 3084.8(b)(1). The Form 602, including a description of "the specific issue under appeal and the relief requested," was to be submitted to the institution's appeals coordinator. *Id.*, § 3804.2(a) and (c).

A prisoner's failure to exhaust administrative remedies is an affirmative defense for which defendants bear the burden of proof.[2] *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). At summary judgment, defendants' burden is "to prove that there was an available administrative remedy, and that the prisoner did not exhaust it. *Id*. To meet that burden, defendants here have submitted the declaration of E. Frijas ("Frijas Decl.," Doc. No. 47-11), a grievance coordinator at RJD (where plaintiff was housed at the time of the alleged incident), and the declaration of S. Gee ("Gee Decl.," Doc. No. 47-12), a grievance coordinator at Salinas Valley (where plaintiff was transferred within 30 days of the alleged incident). The grievance coordinators describe the process in place at RJD and Salinas Valley in 2018 for an inmate to pursue a non-medical grievance. *See* Frijas Decl., ¶¶4-5; Gee Decl., ¶¶4-5. As noted, that process required plaintiff to submit a Form 602 within 30 days of the action or decision giving rise to the grievance – here, October 18, 2018. Frijas Decl., ¶4; Gee Decl., ¶4. The grievance coordinators also explain that inmates could file grievances for incidents that took place at another facility. Frijas Decl., ¶¶5-6; Gee Decl., ¶¶5-6. Frijas and Gee both affirm that they undertook a search of the records at their respective institutions for any appeal submitted by plaintiff between October 18, 2018 and the present, and found none. Frijas Decl., ¶¶7, 10; Gee Decl., ¶¶7, 10. The Court finds that this evidence is sufficient to meet defendants' burden of

---

[2] Plaintiff's "Failure to Exhaust Administrative Remedies" is defendants' Tenth Affirmative Defense. *See* Doc. No. 35 at 8.

"demonstrating a system of available administrative remedies" which were not exhausted by plaintiff. *Williams*, 775 F.3d at 1192.

Accordingly, the burden shifts to plaintiff, "who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him. *Id*. at 1191. Plaintiff acknowledges in his Amended Complaint that he did not exhaust "all forms of available relief" before filing suit.[3] Am. Cpt. at 4. Nevertheless, in his Opposition plaintiff asserts that he did, in fact, "attempt[] to file a [Form] 602" arising out of his allegations but that his documents were "lost, misplaced, discarded or otherwise ignored." Opp. at 19. Plaintiff further asserts that he "felt very intimidated by this." *Id.* In the Ninth Circuit, the threat of retaliation excuses failure to exhaust only where the prisoner can demonstrate that "he actually believed prison officials would retaliate against him if he filed a grievance" and that "his belief was objectively reasonable." *McBride*, 807 F.3d at 987. The Court finds plaintiff's "general and unsubstantiated fears about possible retaliation" do not suffice. *See Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 794 (9th Cir. 2018) (finding that inmates' "factual statements" supported an "actual and objectively reasonable fear of retaliation," whereas generalized statements would not).

Furthermore, plaintiff does not explain why he did not file grievance paperwork once he transferred to Salinas Valley, which was within the 30-day window and where, according to his sworn deposition testimony, he did not have the same concerns about filing a Form 602. *See* Doc. No. 47-1 at 12-13 (plaintiff's testimony that he feared retaliation at RJD, but that things were "better" at Salinas Valley). His statement that he has been

---

[3] Defendants correctly note in their Reply that plaintiff's initial Complaint "specifically states" that plaintiff "failed to file an administrative 602 appeal … based on fear of retribution" by defendants. Reply at 6 (quoting Doc. No. 1 at 12). However, plaintiff's Amended Complaint, which "'supersedes the original pleading,'" contains no such language. *See Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992)). Therefore, the Court refers only to the allegations in the operative pleading. *See id.*

"continually harassed" at Salinas Valley is untethered to any attempt by him to pursue administrative relief. Opp. at 19. Plaintiff cites adverse actions taken against him in 2020, but even assuming (as plaintiff does, without factual support) that these adverse actions were related to plaintiff's "litigation against staff at RJ Donovan," they post-date plaintiff's arrival at Salinas Valley by over a year and could not have been the reason plaintiff did not timely pursue his grievance in November 2018. *See* Opp. at 21 (referring to disciplinary actions taken in January and February 2020). Finally, plaintiff avers that through conversations with unidentified persons "whom [he] trusted," the timing and details of which are not provided, he believed it was not "safe" to file a staff complaint. Opp. at 20. Even assuming plaintiff's conclusory, self-serving statement is true, his assertions of nonspecific "hostility" towards him at Salinas Valley are not a "basis" upon which the Court (or the jury) can "determine" that he reasonably feared retaliation if he "chose to utilize the prison's grievance system." *McBride*, 807 F.3d at 988. Thus, plaintiff has failed to establish that the grievance process was not available to him. *See id.*

Because defendants have met their burden to prove non-exhaustion as an affirmative defense, and plaintiff failed to rebut defendants' evidence of non-exhaustion, the undersigned Magistrate Judge **RECOMMENDS** the District Court **GRANT** defendants' Motion pursuant to 42 U.S.C. § 1997(e).

**C. There Is No Triable Issue of Fact as to Plaintiff's Eighth Amendment Claim**

Exhaustion is a "threshold requirement," and plaintiff's failure to comply with this requirement means he is not entitled to "review of his claims in federal court." *McBride*, 807 F.3d at 988. Nevertheless, the Court finds that even if plaintiff had exhausted his administrative remedies, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim.

The Eighth Amendment prohibits prison officials' "deliberate indifference to a prisoner's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In the

///
///

Ninth Circuit, a heightened risk of suicide can be considered a serious medical need.[4] *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1018 (9th Cir. 2010), *overruled on other grounds by Castro v. Cty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016) (en banc). A prison official is deliberately indifferent only where he "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1970). Under this standard, the official must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he must actually draw that inference. *Id.* This "subjective approach" focuses on what "defendant's mental attitude actually was," and not "what it should have been." *Id.* at 838-39. Proof of the defendant's subjective knowledge may be demonstrated by inference from circumstantial evidence. *Id.* at 842. With these principles in mind, the Court finds plaintiff has not raised a triable issue of fact that any of the defendants were deliberately indifferent to a risk that he would harm himself.

### 1. Defendant Armenta

Plaintiff alleges that he told Armenta "three of four times" during the ICC hearing that Armenta was "putting [his] life in danger" by assigning plaintiff to C-Yard. Am. Cpt. at 6. A significant portion of plaintiff's Opposition, including his declaration, is devoted to an explanation of why his assignment to C-Yard was "inherently dangerous" and that he told the members of the ICC about his "concerns about getting assaulted and/or killed" if placed on C-Yard. *See* Opposition at 5, 9-10. Armenta acknowledges that during the ICC hearing, plaintiff expressed unsubstantiated "safety concerns" about going to C-Yard and that he "disagreed" with the ICC's decision to place him there. Armenta Decl., ¶¶7-8. Plaintiff's stated security concerns are also noted in the report of the ICC hearing, which

---

[4] Based on Dr. Loebenstein's contemporaneous assessment of plaintiff, defendants dispute that plaintiff was suicidal or that his act of self-harm was an attempt at suicide. *See* Mot. at 15. However, it is undisputed that plaintiff was discovered cutting himself in his cell and that he required medical and psychological care following that incident. *See* SSUF at 11-12. The Court finds defendants' Motion can be resolved without addressing whether plaintiff has "exaggerate[d] his mental health concerns," Mot. at 15, and thus declines to do so.

reports that plaintiff "stated that he understands the committee's actions, but disagrees … and stated that he cannot go to Facility C because he believes that his life is in danger with the inmate population in Facility C." *See* Doc. No. 47-5 at 5.  Yet, although it is undisputed that plaintiff voiced "safety concerns" at the ICC hearing, the harm he claims to have suffered was not an assault in C-Yard, but rather his own alleged suicide attempt. *See* Am. Cpt. at 6-7.  Thus, to the extent plaintiff's Eighth Amendment claim arises out of his assignment to C-Yard, his claim fails for want of causation.  *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) (noting that plaintiff in a § 1983 action "must demonstrate that the defendant's conduct was the actionable cause of the claimed injury").

      The Court turns to the question of whether Armenta knew of, but disregarded, the risk that plaintiff would attempt suicide once he returned to his cell. *Farmer*, 511 U.S. at 837.  Armenta avers in a sworn declaration that plaintiff "never told [him] or the Committee that he would harm himself if [they] released him to Facility C."  Armenta Decl., ¶ 9. Plaintiff disputes this, stating in his Opposition that he "specifically" told Armenta at the ICC hearing "that I didn't feel well and wanted to kill myself rather than go to Facility C" and that he told Armenta "I feel depressed and suicidal." Opp. at 11; *see also id.* at 14 ("I told everybody I was suicidal because of my safety concerns.").  However, this fact is not alleged in plaintiff's first Complaint, nor in the operative Amended Complaint.  *See* Doc. No. 1 at 3, 8; Am. Cpt. at 3, 6.  It is also not consistent with the contemporaneously created report of the ICC hearing which contains no reference to plaintiff's purported statement of suicidal intent and, to the contrary, notes that plaintiff did not have "mental health needs" that required alternative placement.  *See* Doc. No. 47-5 at 4, 5.  Defendants also submit the sworn declaration of A. Nevarez, a licensed clinical social worker who attended plaintiff's ICC hearing.  *See* Declaration of A. Nevarez, LCSW, in Support of Defendants' Motion for Summary Judgment ("Nevarez Decl."), Doc. No. 47-17.  Nevarez avers that in October 2018, it was CDCR policy that if an inmate made a statement indicating he was a danger to himself, he was to be placed on observation until evaluated by mental health staff.  *Id.*, ///

¶6. Plaintiff was not placed on observation at the conclusion of the ICC hearing, but was instead returned to his cell. *Id.*, ¶7.

The Court also notes that plaintiff testified in detail at his April 2020 deposition about the exchange between him and Armenta during the hearing. *See* Doc. No. 47-1 at 9-11. According to his testimony, plaintiff told Armenta that he was "distressed," "going through a lot of problems," and having "mental issues." *See id.*; *see also* Motion at 18-19. He testified that he told Armenta "I know my life is in danger [in C-Yard] … I could die. I had a lot of stress. I said, 'Don't put my life in danger.'" Doc. No. 47-1 at 11. Nowhere in his testimony, however, does plaintiff state that he verbalized his suicidal ideation to Armenta – or anyone else on the Committee.

Plaintiff's declaration in opposition to defendants' Motion is not consistent with the record before the Court, including his own sworn deposition testimony. Armenta denies subjective knowledge of plaintiff's suicidal intent, and plaintiff's alleged verbalization of that intent is not documented in the record of the ICC hearing nor corroborated by other witnesses in attendance. The circumstantial evidence – namely, that plaintiff was returned to his cell rather than placed under observation – also does not support an inference that Armenta was aware of plaintiff's intent to harm himself. *See Farmer*, 511 U.S. at 842 (noting that defendant's mental state may be inferred from circumstantial evidence). The only contrary evidence is plaintiff's "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence," which is insufficient to establish a "genuine issue of material fact" for trial. *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). For the foregoing reasons, the Court finds that no reasonable juror could infer that defendant Armenta was aware of, and consciously disregarded, a risk that plaintiff would attempt suicide when he returned to his cell. *Reese*, 208 F.3d at 738. Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that defendants' Motion be **GRANTED** as to Armenta.

///

///

### 2. Defendants Hough and Downs

Plaintiff alleges that after the ICC hearing, he was escorted back to his cell in the ASU by Hough and Downs. Am. Cpt. at 6. According to plaintiff, Hough and Downs laughed and made "incentivizing remarks" when he told them he was feeling "depressed and suicidal." *Id.* at 6-7. Hough and Downs deny that they failed to act on plaintiff's threats of self harm because, they aver, he never made such statements to them. Downs Decl., ¶¶8-9; Hough Decl., ¶¶8-9. Hough and Downs further aver that they were not on shift at the time plaintiff was returned to the ASU. Downs Decl., ¶¶4-6; Hough Decl., ¶¶4-6. In support, defendants submit declarations, time records, and the report of the ICC hearing, showing that the October 18, 2018 ICC hearing started at 9:56 a.m., did not last more than an hour, and that Hough and Downs did not report for work that day until 2:00 p.m. *See* Armenta Decl., ¶3; Doc. No. 47-5 at 5; Declaration of Cecilia Carrillo, Doc. No. 47-6, at ¶5; Doc. No. 47-7 at 10 (officer sign-in sheets for second and third shifts on October 18, 2018, showing that Hough and Downs began work at 1400 hours); Downs Decl., ¶¶2-6, 9; Hough Decl., ¶¶2-6, 9; Nevarez Decl., ¶2.

In Opposition, plaintiff declares that his ICC hearing started at 1:15 p.m. and concluded at 1:55 p.m., despite the documentary evidence to the contrary. Opp. at 8, 9, 10, 11. He also states, without evidentiary support, that both Hough and Downs "reported for work prior to 1400 hours." *Id.* at 11, 12, 13. Plaintiff submits a "Classification Committee Chrono" which is similar although less complete than the ICC hearing report submitted by defendants. *Compare* Opp. at 46-47 *with* Doc. No. 47-5. Plaintiff states the Chrono "shows the meeting was completed at 1355" and further asserts that the "time of commencement of the ICC meeting is fraudulent." *Id.* at 9. Plaintiff also avers that he was in "EOP group therapy" in the morning of October 18, 2018, but does not provide evidence of his attendance. *Id.* The Chrono has not been authenticated and is therefore not properly considered by the Court at summary judgment. *See Clark v. Cty. of Tulare*, 755 F.Supp.2d 1075, 1084 (E.D. Cal. 2010) ("Documentary evidence must be properly authenticated for use in a motion for summary judgment.") (citing *Hal Roach Studios, Inc. v. Richard Feiner*

& *Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir.1990)).[5]  Furthermore, as the Chrono does not indicate anywhere on its face when the ICC hearing started or ended, the Court cannot agree that this document – even if it were properly before the Court – "shows" the hearing concluded at 1:55 p.m.  Opp. at 9.

Aside from his speculative and unsupported assertions that the record of the ICC meeting is "fraudulent" and that Hough and Downs "reported for work prior to 1400 hours," plaintiff offers no specific facts to support his claim that he told Hough and Downs that he was suicidal and they "urge[d] [him] to kill [him]self" in response.  *See* Opp. at 9, 11-12.  "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Plaintiff cites in his Opposition to two unrelated Eighth Amendment claims and states that these cases are evidence of "contemporaneous events occurring at [RJD] that are consistent with the instant case and claims…."  Opp. at 4 (citing *Poslof v. Martel*, S.D. Cal. Case No. 18-cv-761-MMA-AGS, and *Bowell v. Montoya*, E.D. Cal. Case No. 17-cv-00605-LJO-GSA-PC).  Whether or not these cases are "similar[]" to plaintiff's allegations (*id.*) – and, frankly, the Court does not agree that they are – they are not a substitute for the *facts* plaintiff was required to identify to avoid summary judgment.  *See Reese*, 208 F.3d at 738 (nonmoving party must "point to some facts in the record that demonstrate a genuine issue of material fact").  On the record before it, the Court finds that no reasonable juror could infer that Hough and Downs were aware of, but indifferent to, a risk that plaintiff would harm himself.  *See id.*  Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that defendants' Motion be **GRANTED** as to Hough and Downs.

///

///

---

[5] Despite his *pro se* status, plaintiff is "subject to the same rules of procedure and evidence as [litigants] who are represented by counsel."  *U.S. v. Merrill*, 746 F.2d 458, 465 (9th Cir. 1984), *overruled on other grounds by Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002).

### D. Plaintiff's Motion to Appoint Counsel

As noted, plaintiff states in his Opposition and also by separate correspondence to the Court that he "need[s] an attorney to assist [him]" in litigating his case. Opp. at 18; *see also* Doc. No 49 ("I really need an attorney …"). Although not styled as such, the Court will construe these statements as a Motion to Appoint Counsel.

In the Ninth Circuit, "[t]here is no absolute right to counsel in civil proceedings." *Hedges v. Resolution Trust Corp.*, 32 F.3d 1360, 1363 (9th Cir. 1994). However, the Court may in its discretion "request" that an attorney represent indigent civil litigants upon a showing of "exceptional circumstances." *See Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Burns v. County of King*, 883 F.2d 819, 823 (9th Cir. 1989). "That a *pro se* litigant may be better served with the assistance of counsel is not the test." *Okler v. MCC IMU Prison*, No. 3:18-cv-05458-RJB-TLF, 2019 WL 461143, at *1 (W.D. Wash. Feb. 5, 2019). Instead, the Court "must determine whether a) there is a likelihood of success on the merits; and b) the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved." *Cano v. Taylor*, 739 F.3d 1214, 1219 (9th Cir. 2014). These two factors "must be considered cumulatively." *Id.*

Here, the Court finds that there are no "exceptional circumstances" warranting the appointment of counsel in this matter. First, for the reasons discussed in this Report and Recommendation, plaintiff is not likely to succeed on the merits of his claims. "A plaintiff that provides no evidence of his likelihood for success at trial fails to satisfy the first factor of the [exceptional circumstances] test." *Torbert v. Gore*, No. 14cv2911-BEN-NLS, 2016 WL 1399230, at *1 (S.D. Cal. Apr. 8, 2016).

Second, plaintiff has consistently demonstrated the ability to effectively articulate his claims. He has filed numerous motions and other documents in which he has stated legal arguments based on his understanding of legal precedents, accompanied by supporting declarations and voluminous exhibits. Plaintiff reports that he is "unable to gather evidence" due to increasing restrictive measures put in place to prevent the spread of the coronavirus. However, this difficulty is common to most incarcerated litigants today

and does not create exceptional factors requiring the appointment of counsel at taxpayer expense to assist plaintiff. *See Faultry v. Saechao*, No. 18cv1850-KJM-AC-P, 2020 WL 2561596, at *2 (E.D. Cal. May 19, 2020) (denying motion for appointment of counsel and explaining that "[t]he impacts of the COVID-19 health crisis on prison operations are … common to all prisoners.").

For these reasons, the Court finds that plaintiff does not meet the standard for the appointment of counsel. Plaintiff's Motion to Appoint Counsel is therefore **DENIED**.

## RECOMMENDATION AND ORDER

Having carefully considered all the evidence presented, the Court finds that there is no genuine dispute of material fact that plaintiff failed to exhaust his administrative remedies before filing his civil suit. The Court likewise finds that there is no genuine dispute of material related to plaintiff's claim that defendants violated his Eighth Amendment rights. Finally, the Court finds plaintiff has not made an adequate showing under Rule 56(d) that discovery essential to his ability to resist summary judgment is unavailable to him. Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** defendants' Motion and **DENY** plaintiff's request for a continuance pursuant to Rule 56(d).

**IT IS HEREBY ORDERED** that no later than ***March 24, 2021*** any party to this action may file written objections to this Report and Recommendation with the District Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

///
///
///
///
///
///
///

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the District Court and served on all parties no later than **March 31, 2021**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir. 1991).

For the reasons stated above, **IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel is **DENIED**.

**IT IS SO ORDERED.**

Dated:  February 23, 2021

Hon. Karen S. Crawford
United States Magistrate Judge